In re MILLER.

(District Court, E. D. New York. February 19, 1913.)

BANKRUPTCY (§ 407*)—DISCHARGE—FRAUD.

A bankrupt having filed a voluntary petition, stating that he had no assets, it appeared on an application for a discharge that the proceeding was largely brought to relieve him from liability as an indorser of certain accommodation notes. It appeared that he had conducted a business which he had got rid of at the time when trouble appeared, and the proceeds of the business had disappeared. He built up another business which his sister allowed him to run and for the good will and stock of which a substantial payment was made, without keeping any record of what was done. This was sold, and the proceeds passed into the hands of the sister, who had done nothing to produce the business, and a third business was started without capital, which was being conducted apparently for the sister's benefit as a present from the bankrupt. *Held*, that such facts required a denial of the bankrupt's discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Isaac Miller, formerly doing business as the Brooklyn Glass Works. On petition for discharge. Denied.

James H. Hickey, of New York City, for objecting creditor.
Adolph Cohen, of New York City, for bankrupt.

CHATFIELD, District Judge. The bankrupt has applied for discharge. The records show that he filed a voluntary petition upon the 22d day of May, 1911, and that he had no assets. The principal debts from which he wished to be freed by bankruptcy are two arising from notes which he had made to Goldberg & Rothman, of Boston. One of these has been put in evidence, signed by him on the 9th of July, 1907, for $1,846.16, payable four months after date, to the order of Goldberg & Rothman. It appears that this note was discounted by Goldberg & Rothman, that subsequently Rothman became insolvent, and the note was not paid. The indorsee, James Berkman, assigned the note, and suit was brought thereon in the Supreme Court of New York county. Judgment was docketed upon the 10th day of March, 1908, but service of the summons and complaint upon which this judgment was entered was set aside on December 2, 1909, and a new action was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

then started, which has not yet been disposed of. In 1907 the bankrupt was doing business under the name of the Brooklyn Glass Works, and soon after the date of Rothman's difficulties sold the business to one Henry G. Feinberg for the sum of $1,085, of which $700 represented a prior debt and $385 was paid by check. Feinberg was interested in a dairy, and did not continue the glass business, but merely took over the stock of glass on hand. He testifies that he repaid himself as much as he could by the sale of this glass. The testimony shows that the business consisted of buying glass (such as photographers' used-plates), cleaning the same, and disposing thereof to picture-frame dealers. The good will and knowledge of such a business would seem to comprise a considerable part of its value, and yet Feinberg left all this in the hands of Miller, and contented himself with such security as he had from the stock of secondhand glass at the time of this sale. Shortly thereafter the bankrupt's sister, Yetta Miller, filed a certificate on the 14th of October, 1907, with the county clerk in Brooklyn, that she was doing business under the name of the Williamsburg Glass Works, and employed Isaac Miller at a salary to run the business for her. He did so, opening a store at 195 Bedford avenue, Brooklyn, and this business was being conducted in that way at the time the notes above referred to became due. Isaac Miller did nothing to take up the Berkman note, and alleges that it was not a genuine loan, but an accommodation indorsement for Goldberg & Rothman. Be this as it may, he was liable, if the note had been transferred to the hands of an innocent purchaser. The sales of his business, coupled with his desire to go through bankruptcy, seem to have involved him in more difficulty than to have contested the validity of the note at the outset.

After the Williamsburg Glass Works had continued until June 25, 1910, a sale was made to Louis Miller, another brother of Yetta Miller, who paid her $1 therefor, but gave one check of $1,000 upon the 29th of March, 1910, and one check for $275, upon the 25th of June, 1910, which it is testified were the real consideration for the transaction. These checks were paid through the North Side Bank, in which a new account was opened upon the 15th day of September, 1910, under the name of the "North Side Glass Works, Yetta Goldberg, Proprietor." The testimony does not show the previous form of the account, but Yetta Miller had in the meantime married a man by the name of Goldberg, and immediately after the sale to her brother Louis Miller transferred the business of buying and selling glass to No. 183 North Sixth street, Brooklyn. She filed a certificate upon the 15th day of September, 1910, that she was doing business at that address under that name, and opened the bank account referred to with a deposit of $200. The North Side Glass Works has also been conducted by the bankrupt Isaac Miller, as manager for his sister, and he receives a small salary therefor. The books of the North Side Glass Works have been produced in court, consisting of a bank book and of a ledger, which contains nothing more than the memorandum of sales to different customers, with the rubber stamp record of payment therefor. No check books or vouchers are produced, no books of any sort were kept to show what became of the proceeds, and nei-

ther the bankrupt nor his sister has furnished any evidence, except their general statements, to show how these separate businesses could be built up by the bankrupt's efforts so as to sell for $1,085, then to start from nothing and grow into a business worth $1,275, and then from a bank deposit of $200 to another successful business, going on at the present time. This has all been done without accounting for the disposition of the proceeds of the first sale to Feinberg, or the second sale to Louis Miller, or of any of the profits or accumulations from the present business, in any way whatever. Both the bankrupt and his sister testify that she pays the rent, receives all the profits, and helps run the business by going to the store two or three times a month, but with absolutely no knowledge of what is being done, and with no evidence whatever of the turning over of profits or accounting for the business to her. In short, the bankrupt conducted a business which he got rid of at the time when trouble was in sight because of an accommodation note, and the proceeds of the business disappeared. He built up another business which his sister allowed him to run, and for the good will and stock of which a substantial payment was made, without keeping any record of what was done. Upon the sale of this and another disappearance of the proceeds into the hands of the sister who had done nothing to produce the business, and who was therefore the recipient of a present from her brother of everything except the return represented by his salary, a third business is started, again without capital, and is being conducted apparently for the sister's benefit as a present from the bankrupt, who meanwhile seeks to avoid his legitimate debts. On such testimony a discharge in bankruptcy cannot be granted. If the bankrupt has an honest defense to the action upon the promissory notes, he can dispose of the only debts which can cause him trouble, and can then pay his creditors and be relieved of the bankruptcy proceedings.

A finding by the commissioner that he believes or disbelieves the witnesses, and that certain facts exist or do not exist, would be upheld by this court, if a clear issue of fact had been presented, but in this case the special commissioner has intimated that the story of the bankrupt is unworthy of belief, and then finds that he is not satisfied with the proof offered by the creditors. The court does not feel that such doubt can be predicated upon the testimony, for the burden is upon the bankrupt to show that he is entitled to a discharge, if the creditors sustain their accusation that he has so conducted his business as not to indicate good faith, and has caused his assets to disappear from his creditors.

The report cannot be confirmed, and the application for discharge will be denied.